UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TERRANCE WYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YATES-AMERICAN MACHINE | ) | |
| COMPANY,  and/or | ) | |
| YATES-AMERICAN MACHINE) | | |
| CO., INC.. | ) | |
| | ) | |
| AND | ) | 1:13-cv-00300-JAW |
| | ) | |
| DK-SPEC INC. d/b/a GUÉRETTE, | ) | |
| INDUSTRIE GUÉRETTE, | ) | |
| INDUSTRIE GUÉRETTE | ) | |
| (DIVISION DE DK-SPEC INC. | ) | |
| and/orINDUSTRIE GUÉRETTE INC. | ) | |
| d/b/a QUEBEC INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY

In this personal injury and product liability action, Yates-American Machine Company filed a *Daubert* motion seeking to exclude the proposed testimony of Plaintiff's experts.  The Court denies the motion, concluding that any inadequacies in the experts' proposed testimony do not require wholesale exclusion and are best tested through the traditional tools of trial work: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

I.      BACKGROUND

        A.      Procedural History

On May 14, 2013, Terrance Wyman filed a complaint against Yates-American Machine Company (Yates-American) and DK-Spec Inc. in the Somerset County Superior Court alleging one count of negligence and one count of strict liability against each of the Defendants.  *Notice of Removal* Attach. 1 *Compl.* (ECF No. 1) (*Compl.*).  On August 6, 2013, Yates-American removed the case to federal court.  *Id.*

On July 14, 2015, the Court held a Rule 56 Pre-Filing Conference and ordered Yates-American to notify the Court if a *Daubert* hearing was necessary.  *Min. Entry* (ECF No. 85).  On July 31, 2015, Yates-American requested a *Daubert* hearing on Mr. Wyman's experts, Paul Cyr and John Orlowski.  *Yates-American's Letter Req. for Daubert Hr'g* (ECF No. 88).[1]  On October 15, 2015, at the Court's request, Yates-American summarized its preliminary objections to the proposed testimony of Mr. Orlowski and Mr. Cyr.  *Yates American Machine Co. Inc.'s Prelim. Daubert Objs. to the Proposed Test. of John Orlowski and Paul Cyr* (ECF No. 104) (*Def.'s Prelim. Objs.*).  Mr. Wyman responded to the preliminary objections on October 23, 2015.  *Pl.'s Resp. to Def.'s Prelim. Daubert Objs. to the Proposed Test. of John Orlowski and Paul Cyr* (ECF No. 111) (*Pl.'s Resp.*).  The Court held an evidentiary hearing that began on October 26, 2015 and continued on December 16 and 17, 2015.  *Min. Entry* (ECF No. 114); *Min. Entry* (ECF No. 119); *Min. Entry* (ECF No. 121).

---

[1]      DK-Spec Inc. also requested a *Daubert* hearing on Mr. Wyman's experts.  *DK-Spec Inc.'s Letter Req. for Daubert Hr'g* (ECF No. 89).  However, on October 15, 2015, the parties stipulated to the dismissal of DK-Spec Inc. from the case.  *Stipulation of Dismissal* (ECF No. 103).

On February 17, 2016, Yates-American supplemented its preliminary objections and moved to exclude the experts' testimony. *Yates American's Suppl. Br. to Exclude Pl.'s Experts* (ECF No. 133) (*Def.'s Mot.*).  Mr. Wyman opposed the motion on February 26, 2016.  *Pl.'s Resp. to Def.'s Suppl. Br. to Exclude Pl.'s Experts* (ECF No. 138) (*Pl.'s Opp'n*).  Yates-American replied on March 11, 2016.  *Yates American Machine Company's Reply to Pl.'s Opp'n to Yates American Machine Company's Daubert Challenges for Paul Cyr* (ECF No. 139) (*Def.'s Reply*).

### B.    The Disputed Experts

#### 1.    Paul A. Cyr

Mr. Wyman designated Paul A. Cyr as an expert.  Mr. Cyr spent two years at Northeastern University's College of Engineering and is a Licensed Stationary Engineer in the state of Maine.  *Pl.'s Resp.* Attach. 2 *Resume of Paul A. Cyr* at 4 (*Cyr Resume*).  He spent over 22 years working for OSHA before retiring and developing an expert consulting business.  *Id.* at 3.  During his time at OSHA, Mr. Cyr conducted physical inspections of workplaces for OSHA compliance and was considered an expert on logging, sawmill, paper mill, and arborist safety and health issues.  *Id.* at 2.  Mr. Cyr has participated in, as well as developed and delivered, numerous training and safety courses.  *Id.* at 4, 7-8.

Mr. Cyr prepared an initial report for this case on January 13, 2014.  *Pl.'s Resp.* Attach. 3 *Paul Cyr Report* (Jan. 13, 2014) (*Cyr Report*).  In this report, Mr. Cyr opined that 1) the Yates-American planer should have and could have feasibly been guarded; 2) the lack of guard caused Mr. Wyman's injuries; 3) the planer did not meet industry standards; and 4) Yates-American and Industrie Guerrete knew, or should have

known, that the planer did not meet industry standards. *Id.* at 2-3. Mr. Cyr supplemented this report on May 14, 2015 in response to one of Yates-American's expert reports. *Pl.'s Resp.* Attach. 5 *Suppl. Report of Paul A. Cyr* (May 14, 2015) (*Cyr Suppl. Report*). In this report, Mr. Cyr opines that, contrary to Defendant's expert's conclusions, Yates-American did in fact manufacture the base and hood on the planer and that any changes to the planer are "simply a reflection of advances in systems and technology." *Id.* at 2-3. In addition to testifying about the information contained in these reports, Mr. Cyr plans to rebut the opinions of Yates-American's experts. *Pl.'s Resp.* Attach. 4 *Pl.'s Suppl. of Orlowski and Cyr Expert Ops. and Rebuttal of Def.'s Expert Ops.* (*Pl.'s Suppl. of Experts' Ops.*).

### 2. John M. Orlowski

Mr. Wyman also designated John M. Orlowski as an expert in this case. Mr. Orlowski is a Licensed Professional Engineer in the states of Maine, Massachusetts, and New York. *Aff. of John Orlowski* (ECF No. 112) (*Orlowski Aff.*) Attach. 1 *John M. Orlowski Curriculum Vitae* at 1 (*Orlowski Resume*). He has over 45 years of drafting, design engineering, and consulting experience and he co-authored a chapter in "Products Liability" entitled *Engineering Aspects of Guarding of Machinery and Equipment. Id.* at 2-4.

Mr. Orlowski prepared a report for this case on January 13, 2014. *Orlowski Aff.* Attach. 2 *John Orlowski Report* (Jan. 13, 2014) (*Orlowski Report*). He also prepared a technical report on May 2, 2014. *Id.* Attach. 3 *John Orlowski Technical Report* (May 2, 2014) (*Orlowski Technical Report*). In these reports, Mr. Orlowski states that, in his opinion: 1) the Yates-American planer was defective and

unreasonably dangerous because it lacked guards, emergency stop controls, and suitable warnings; 2) Yates-American and Industrie Guerette did not act as reasonable manufacturers by failing to adequately guard the planer and warn of such conditions; and 3) the condition of the planer caused Mr. Wyman's injuries. *Orlowski Report* at 3; *Orlowski Technical Report* at 9. In addition to testifying about the information contained in these reports, Mr. Orlowski plans to rebut the opinions of Yates-American's experts. *Pl.'s Suppl. of Experts' Ops.* at 1.

## II.   THE PARTIES' POSITIONS

### A.   Yates-American's Preliminary *Daubert* Objections

Pursuant to the Court's request, Yates-American summarized its challenges to the proposed opinions and testimony of Mr. Wyman's experts, Mr. Cyr and Mr. Orlowski. *Def.'s Prelim. Objs.* at 1. Yates-American first objects to Mr. Cyr's proposed testimony that Yates-American manufactured, designed, and sold the planer and parts involved in Mr. Wyman's accident. *Id.* at 2. Yates-American provides contrary testimony from the company's owner that the planer is not a Yates-American planer. *Id.* Additionally, Yates-American states that Mr. Cyr admitted that he has no knowledge or experience with the manufacturing process of Yates-American planers, nor any knowledge of the aftermarket parts manufacturing industry, and that he has no information about the particular parts used for the planer in this accident. *Id.* at 2-3. Yates-American claims that Mr. Cyr's lack of knowledge in these areas is significant because "Industrie Guerette was in the business of manufacturing Yates planers and Yates parts for sale in the aftermarket industry." *Id.* at 3. It then cites

testimony by DK-Spec Inc.'s president in which he testified "to the copycat nature in the parts manufacturing industry." *Id.*

Yates-American also objects to Mr. Cyr's proposed testimony "that the planer involved in Mr. Wyman's accident was defective and unreasonably dangerous because it did not have a guard over the outfeed rolls, and that the failure to provide a guard in 1973 caused Mr. Wyman's injury." *Id.* at 4. According to Yates-American, Mr. Cyr admitted that he has no information or evidence as to whether a guard was installed on the planer. *Id.* It claims that this testimony is significant because Yates-American says it "sold the very guard that Cyr claims should have been provided on the planer to the owner of the Yates A-20-12 planer serial number B28984." *Id.*

Yates-American objects to Mr. Cyr's general testimony on these issues pursuant to Federal Rule of Evidence 702. *Id.* First, it argues that Mr. Cyr is not qualified to provide expert testimony on whether Yates-American designed, manufactured and sold the planer or any of its components. *Id.* Next, Yates-American argues that Mr. Cyr's testimony will not assist the jury in understanding the evidence or in making factual determinations on this issue or on whether there was ever a guard installed on the planer. *Id.* Additionally, Yates-American argues that Mr. Cyr's proposed testimony is not based on sufficient facts or data, his testimony is not the product of reliable principles and methods, and that Mr. Cyr has not reliably applied the principles and methods to the facts of the case. *Id.*

More specifically, Yates-American makes Rule 702 objections to nineteen facts or opinions made by Mr. Cyr in his reports and deposition:

1.     that there was no indication that a guard was ever installed for the out root feed rolls of the Yates American planer sold in 1973;

2.     there was no indication that warnings or instructions had ever been placed on the Yates American planer sold in 1973;

3.     the lack of a guard sold with the Yates American planer in 1973 resulted in the accident planer being unreasonably dangerous and was the cause of Mr. Wyman's injury;

4.     if properly guarded Mr. Wyman's hand could not have been pulled into the outfeed rolls and his injury could not and would not have occurred;

5.     the guard would not have affected the operation of the planer;

6.     knowledge regarding the guarding of nip points such as the one on the planer causing Mr. Wyman's injury has been widely known and published since the early 1900s and Yates American knew or should have known of such guarding information;

7.     the Yates American planer did not meet the standard of care for manufacturers at the time of manufacture because of its lack of guarding the nip point and moving parts of the outfeed rolls,

8.     the lack of a guard is a violation of OSHA standards;

9.     the name "American" appears to have been ground off casting on the base of the planer at Stratton lumber;

10.     the letter "B" was in front of the serial number 28984 and was partially obliterated;

11.     the measurements of the outfeed rolls stands and the outfeed rolls match Yates American drawings;

12.     the right and left outfeed roll stands were manufactured by Yates American and the right outfeed roll stand has been modified, and the right and left in feed roll stands were manufactured by Yates American;

13.     the hood observed by Mr. Cyr on the accident planer was identical to other hoods on other Yates American planers;

14.     a Yates American 1973 or 1989 guard probably would have prevented several other hand injuries Mr. Borghi admitted to in his deposition;

15.     other alleged injuries on Yates American planers led to Yates inability to obtain insurance;

16.     other alleged injuries are the reason for Yates American designing the outfeed roll guard;

17.     the outfeed rolls were manufactured by Yates American;

18.     the "Yates" lettering on the planer involved in the plaintiff's accident is consistent in size and appearance with lettering on other Yates American planers; and

19.     rebuilding and modernizing of the Yates American planer allowed Stratton lumber to remain competitive and to get a leg up on the competition.

*Id.* at 5-6.  Yates-American additionally objects to any proposed testimony by Mr. Cyr regarding "issues of welding, manufacturing, forging, cutting, drilling, and machining by Yates-American" on its parts and planers on the same grounds under Rule 702. *Id.* at 6.

Yates-American turns to its objections to Mr. Orlowski's proposed testimony and opinions.  First, it objects to Mr. Orlowski's general testimony that Yates-American manufactured the planer.  *Id.*  It opposes this testimony by providing contrary testimony from its own experts.  *Id.* at 6-7.  Additionally, Yates-American lists what it views as Mr. Orlowski's lack of experience operating, maintaining, servicing, and designing a wood planer, as well as his lack of a degree in engineering and lack of education beyond high school.  *Id.* at 7-8.  It also claims that Mr. Orlowski admitted that he has no knowledge about what occurred to the planer after it was sold in 1973.  *Id.* at 8.

Yates-American further objects to the following specific facts and opinions made by Mr. Orlowski in his reports and deposition:

1.      the planer involved in Terrence Wyman's accident was a Yates American planer;
2.      his opinion that "the upper hood could and should have been extended toward the juncture of the 2 rolls and a similar guard could and should have been installed on the lower guard";
3.      his opinion that "it was also feasible for the manufacturer to install interlocked gates either side of the hazard";
4.      his opinion that the installation of a guard would not have affected his operation of the planer and would have prevented Mr. Wyman's injury from occurring;
5.      his opinion that "knowledge regarding the guarding of a nip points such as the one on the planer causing Mr. Wyman's injury have been widely known and published since the early 1900s;

8

6.      his statement that the Yates American planer did not meet the standard of care because it lacked a guard for the nip point and moving parts of the outfeed rolls;

7.      his opinion that "a machine manufacturer has a duty to design and supply a machine that is safe and operates in accordance with accepted safe standards;

8.      his proposed testimony and opinions that the planer was defective and unreasonably dangerous in that it was not furnished with suitable warnings;

9.      his opinion that the planer was defective and unreasonably dangerous in that the machine was not supplied with necessary emergency stop controls; and

10.     his opinion that the absence of warnings on the machine, additional guarding on the machine and the absence of emergency stops on the machine caused Mr. Wyman's injuries.

*Id.* at 8-9.

Again, Yates-American makes these objections pursuant to Rule 702.  *Id.* at 8. It claims that Mr. Orlowski is not qualified because he has no education, training, or experience in the planer industry that would enable him to assist the jury on any issue regarding the design and manufacture or sale of planers, and in particular, the planer involved in this case.  *Id.* at 9.  It asserts that Mr. Orlowski cannot assist the jury with respect to the standard of care and industry practices in the design and manufacture of planers in the 1972 or 1973 timeframe.  *Id.*  Yates-American also alleges that Mr. Orlowski's opinions are based on insufficient facts or data and are the product of unreliable methods.  *Id.* at 8.

### B.      Terrance Wyman's Response

In response to Yates-American's preliminary objections, Mr. Wyman provides affidavits from Mr. Cyr and Mr. Orlowski, as well as other supporting documentation, such as the experts' resumes and reports, excerpts from their depositions, and certain

exhibits upon which they relied in forming their opinions. *Pl.'s Resp.* Attachs. 1-8; *Orlowski Aff.* Attachs. 1-6.

### C.   Yates-American's Supplemental Motion

After the Court held a three-day evidentiary hearing on the *Daubert* issue, Yates-American supplemented its objections and moved to exclude Mr. Wyman's experts. *Def.'s Mot.* at 1-2.  As Yates-American sees it, Mr. Wyman conceded at the hearing that Mr. Orlowski would only testify to the issue of whether the machine was properly guarded and so Yates-American "relies upon its previous filing challenging Mr. Orlowski's proposed testimony." *Id.* at 2.

Turning to Mr. Cyr, Yates-American maintains that Mr. Cyr's proposed testimony and expert disclosures are inadmissible under Rule 702, arguing that he is not qualified, his testimony will not assist the jury, and his opinions are not based on sufficient facts or data, nor are they the product of reliable methods. *Id.* at 3-4.  Yates-American further argues that Mr. Cyr's "opinions are irrelevant, are inadmissible under Rule 701 and their probative value is outweighed by unfair prejudice to [Yates-American] and will mislead and confuse the jury." *Id.* at 4.

Yates-American begins by putting forth its own version of the facts related to the Yates American A-20-12 planer sold in 1973, the Stratton Lumber planer sold in 2000, the infeed and outfeed roll stands of the Stratton planer, and Industrie Guerette's manufacture of its own parts and planers. *Id.* at 4-9.

It then argues that Mr. Cyr lacks the knowledge and qualifications to offer either lay or expert opinion testimony. *Id.* at 10.  It states that Mr. Cyr is a high school graduate who studied engineering at Northeastern for two years in the 1960s

and was employed as a steam plant boiler operator at a mill for nine years before going to OSHA in 1980. *Id.* It points out that Mr. Cyr inspected approximately 25 planers, about half of which were Yates-American planers, and that he documented the size of the nip point and its opening, but Yates-American states that he never measured or analyzed how a particular component was built on a particular planer. *Id.* Yates-American emphasizes that Mr. Cyr is not a licensed professional engineer and has never worked as a welder. *Id.* It goes on to detail a number of specific areas in which Mr. Cyr lacks experience related to the design, manufacture, and sale of planers. *Id.* at 11-12. Yates-American then attacks Mr. Cyr's testimony generally, alleging that he does not have the relevant information, documentation, knowledge, or evidence to form his opinions. *Id.* at 12-16.

Next, Yates-American begins its discussion of the applicable law. *Id.* at 16. It provides the language for Rule 701, which governs lay testimony. *Id.* It explains that lay testimony must be "based upon the witness's personal knowledge and observations" and that the "prior personal experiences must be sufficiently numerous or informative to provide a rational basis for the opinion." *Id.* at 16-17. In Yates-American's opinion, Mr. Wyman failed to introduce sufficient foundational evidence for Mr. Cyr to offer lay testimony regarding the manufacturer of a particular part or component of a planer. *Id.* at 18-19.

Yates-American also discusses Rule 702, which governs expert testimony. *Id.* at 17-18. It outlines factors that courts have found relevant to determine whether expert testimony is sufficiently reliable, including whether the opinions were

developed expressly for the purpose of testifying or were conducted independent of litigation; whether the expert unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and whether the expert has adequately accounted for obvious alternative explanations. *Id.* It notes that when an expert's testimony is based on his experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts." *Id.* at 18 (citing FED. R. EVID. 702 advisory committee's note to 2000 amendment). Yates-American also asserts that "[e]xpert opinion testimony regarding changes to a machine are inadmissible if the expert's testimony is insufficiently grounded in knowledge of the specific machine at issue in the case." *Id.* (citing *Hochen v. Bobst Grp., Inc.*, 290 F.3d 446 (1st Cir. 2002)). Yates-American then argues that Mr. Wyman failed to introduce sufficient evidence to prove that Mr. Cyr is qualified as an expert on any subject other than OSHA regulations. *Id.* at 19.

Finally, Yates-American explains why it contends specific portions of Mr. Cyr's testimony are inadmissible under Rules 701, 702, 401, 402, and 403. *Id.* at 19-29. The Defendant generally repeats and applies the arguments it previously made under Rules 701 and 702 to these particular pieces of testimony, stating specifically that these conclusions are speculative, conclusory, and not well-grounded. *See id.* Yates-American adds that these opinions are irrelevant and any probative value they do have is outweighed by the unfair prejudice it would cause to Yates-American by confusing and misleading the jury. *Id.*

### D.     Terrance Wyman's Opposition

Mr. Wyman opposes Yates-American's motion to exclude the proposed expert testimony and states that "[u]nder the guise of a *Daubert* challenge" Yates-American "essentially seeks to fully litigate its primary defense to Plaintiff's claim, namely that it did not design and manufacture the planer at Stratton Lumber that injured Terrance Wyman on May 2, 2007." *Pl.'s Opp'n* at 1.  In Mr. Wyman's view, Yates-American argues that "because it disagrees with the factual findings of Plaintiff's experts, in particular Paul Cyr, the court should entirely exclude the expert testimony." *Id.*  Mr. Wyman claims that "[b]ecause this is not the function of *Daubert* and because Plaintiff's experts are sufficiently qualified by education, training, and experience to offer the proposed opinions, [Yates-American's] briefs should be denied." *Id.*

Mr. Wyman turns to Mr. Cyr, whose testimony was the focus of Yates-American's motion, and argues that "Mr. Cyr's extensive professional experience in the industry well qualifies him to testify to the proffered opinions." *Id.* at 2.  Mr. Wyman outlines Mr. Cyr's educational and professional experiences, including two-years of study in mechanical engineering at Northeastern University, his work in the engineering department and on a construction project at Fraser Paper, and his career at OSHA evaluating engineering drawings and schematics and performing inspections of various types of machinery, including Yates-American planers. *Id.* at 5-7.  Mr. Wyman also emphasizes Mr. Cyr's design and performance of training courses, which covered aspects of sawmill safety including planers and planer-

matchers. *Id.* at 7-8. Finally, Mr. Wyman discusses Mr. Cyr's experience and training with welding. *Id.* at 9.

Mr. Wyman then proceeds to lay out the basis for each of Mr. Cyr's specific opinions objected to by Yates-American. *Id.* at 9-21. According to Mr. Wyman, the foundation for Mr. Cyr's opinions includes, among other things, personal observation and inspection of the Stratton Lumber planer that caused Mr. Wyman's injury, review of the invoices, manuals, and catalogs of the planer, Mr. Cyr's own experiences with planer inspections, and his familiarity with ANSI and OSHA standards. *Id.*

Next, Mr. Wyman expands on Mr. Orlowski's qualifications, which includes 45 years of engineering experience, professional engineer licenses in three states, and certifications as a Safety Professional in Engineering Aspects and as a Forensic Examiner. *Id.* at 21. Mr. Wyman also lists Mr. Orlowski's publications. *Id.* He then explains that, as submitted in Mr. Orlowski's affidavit, his opinions are based on his training, knowledge, and experience, as well as his own personal observations of the Stratton Lumber planer. *Id.* at 22-23.

Mr. Wyman argues that his experts "were properly designated and their proposed testimony as outlined in their designations, developed through the discovery process, and explained during the expert hearings meets the requirements of F.R. Evid. 702 and the factors set forth in *Daubert*." *Id.* at 23. Citing caselaw, Mr. Wyman states that a court "must act as a gatekeeper before admitting expert testimony" and that in that capacity, the court must determine whether an expert is qualified and whether the testimony rests on a reliable foundation and is relevant.

14

*Id.* at 23-24.  Mr. Wyman claims that Yates-American asks the court to "be more than the 'gatekeeper' for expert testimony."  *Id.* at 24.  It argues that Yates-American asks the court to exclude all of Mr. Cyr's testimony "based on unsubstantiated disputes it has with the correctness of the proffered testimony."  *Id.*  He then submits that "[t]hese are not issues for the court at this stage but are for the factfinder to resolve."  *Id.*  He says that the "court must merely decide whether Plaintiff has met his minimal burden of establishing by a preponderance of evidence that the proposed expert testimony is reliable" and states that he has made this foundational showing.  *Id.* at 24-25.

Mr. Wyman cites Rule 702 for the proposition that experts may be qualified by "knowledge, skill, experience, training, or education."  *Id.* at 25.  He points out that the Advisory Committee explained that Rule 702 includes "not only experts in the strictest sense of the word . . . but also the large group sometimes called 'skilled' witnesses."  *Id.*  He also explains that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  *Id.*

Mr. Wyman states that Yates-American's objections to Mr. Cyr's qualifications and testimony are  "based on a definition of expertise that is not contained in the rule and is unsupported by caselaw."  *Id.* at 26.  He argues that Mr. Cyr is "well qualified to testify as an expert in this case on the basis of his very specialized skill, experience, knowledge, and training in the factual issues surrounding the Stratton Lumber planer and its mechanisms."  *Id.* at 26-27.  He also claims that "federal courts have made it clear that professional experience alone is adequate to support expert

testimony about a particular machine in a products liability case." *Id.* at 27 (citing *Correa v. Cruisers, A Div. of KCS Intern. Inc.,* 298 F.3d 13 (1st Cir. 2002)).  He explains how Mr. Cyr's experiences led him to reach his conclusions and the methodology Mr. Cyr used to analyze the issues.  *Id.* at 29.  Further, Mr. Wyman indicates that Yates-American is entitled to cross-examine Mr. Cyr and to introduce its own expert testimony to expose any flaws.  *Id.* at 29-30.

Mr. Wyman turns to the challenges to Mr. Cyr's specific opinions, although Mr. Wyman claims that "these are really factual disputes masquerading as challenges to Mr. Cyr's qualifications." *Id.* at 31.  Mr. Wyman argues that Mr. Cyr is qualified to testify to each of these opinions and explains Mr. Cyr's process and methodology for forming his conclusions.  *Id.* at 31-36.  For example, he contends that Mr. Cyr has extensive experience investigating planers, including the one in this case, and that he used this knowledge to make comparisons between his measurements and the blueprints of other Yates-American planers.  *Id.* at 32.

Mr. Wyman also argues that Mr. Cyr's testimony is helpful to the trier of fact and relevant to the claims.  *Id.* at 36.  He explains that the discussion of the Stratton Lumber planer in this case and its 1,000 parts "is complicated and unique to the machine industry."  *Id.*  Mr. Wyman adds that "the Stratton Lumber planer cannot be transported to the court so that it can be observed and inspected by the jury."  *Id.* Additionally, Mr. Wyman maintains  that Mr. Cyr's testimony concerning safety standards is "essential for the factfinder to understand why the Stratton Lumber planer at issue in this case is deficient in design and manufacture."  *Id.*

Finally, Mr. Wyman contends that Yates-American "waived any further briefing challenging the expert testimony of Mr. Orlowski, stating that it relies upon its previous filing" and therefore he "likewise relies on the briefing and record evidence provided previously and herein as applicable to both experts." *Id.* at 36.

### E.   Yates-American's Reply

In its reply, Yates-American maintains that "Mr. Cyr is not qualified to testify as an expert witness on any issues other than the enforcement of OSHA regulations as they apply to employers." *Def.'s Reply* at 1.  It states that Mr. Cyr "never offered any testimony during the hearings to suggest that he ever looked at the parts on a Yates American planer to analyze the parts including how they were manufactured and processed or that he had any background in looking at the interior parts of the right outfeed stand."   *Id.* at 2.   Yates-American also argues that Mr. Cyr's observations of welding and his two-week welding course "by no means qualifies Mr. Cyr as an expert in welding."  *Id.* at 3.

Yates-American distinguishes the experts in this case from the experts in the cases cited by Mr. Wyman, explaining that Mr. Cyr is neither a mechanic, who repairs and maintains machines, nor a trained or professional engineer.  *Id.* at 4.  Yates-American does not believe working as an OSHA inspector allows an individual to offer opinions regarding the manufacturing process.  *Id.*

It also states that Mr. Cyr's testimony "is irrelevant and will not assist the jury and does not fit the facts of this case."  *Id.* at 5.  It states that Guerette made its own parts for Yates-American planers and manufactured its own Yates-American planers. *Id.*  It also claims that Mr. Cyr could only establish that a couple of the parts on the

planer were from Yates-American, but that there are over 1,000 parts total on the machine. *Id.* at 6. It contends that "[t]here is simply the complete absence of evidence in the record to suggest that the Stratton lumber planer was manufactured by Yates-American." *Id.* It then argues that Mr. Cyr ignored these facts and the "the court is well within its discretion to exclude the testimony of an expert when the expert has not adequately accounted for an obvious alternative explanation." *Id.* (collecting cases).

## III.   DISCUSSION

### A.   Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court designated trial judges as gatekeepers responsible for determining whether Rule 702's requirements are met in any given case. *Id.* at 597. A judge exercising the gatekeeper role must "ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (extending *Daubert's*

holding to technical and other specialized expert testimony).  The inquiry under Rule 702 is a "flexible one."  *Vargas*, 471 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594).

## B.    Motion to Exclude Expert Testimony

### 1.    Paul Cyr

Yates-American's primary objection is to the proposed testimony of Paul  Cyr. First, it argues that Mr. Cyr is not qualified to testify about whether Yates-American designed, manufactured or sold the planer and its parts or about the cause of Mr. Wyman's injury.  *Def.'s Prelim. Objs.* at 4; *Def.'s Mot.* at 10.  Specifically, Yates-American points out that Mr. Cyr "is not a licensed professional engineer," "has never worked as a welder," and, it claims, lacks any experience working with and analyzing Yates-American planers in particular.  *Def.'s Mot.* at 10-12.

The Court disagrees.  In *Santos v. Posadas de Puerto Rico Associates, Inc.*, 452 F.3d 59 (1st Cir. 2006), the First Circuit emphasized that "experts come in various shapes and sizes; there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field."  *Id.* at 63; *cf. United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir. 1987) (explaining that "[e]xpertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies" and emphasizing "the value of extensive practical experience").  At the same time, a testifying expert "should have achieved a meaningful threshold of expertise in the given area."  *Hinton v. Outboard Marine Corp.,* 828 F. Supp. 2d 366, 372 (D. Me. 2011) (internal citation omitted).  "The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—

knowledge, skill, experience, training, or education." *Santos*, 452 F.3d at 64 (citing *United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995) and *United States v. Paiva*, 892 F.2d 148, 160 (1st Cir. 1989)).  A trial judge has "broad discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses." *Vargas*, 471 F.3d at 262.

Mr. Cyr graduated from Madawaska High School in Maine and attended Northeastern University's College of Engineering for two years.  *Cyr Resume* at 4. He is a Licensed Stationary Engineer in the state of Maine and has completed over 50 training programs, including numerous courses related to logging, welding, and health and safety standards.  *Id.* at 4, 7-8.  Mr. Cyr worked as an engineer at Fraser Paper before joining the United States Department of Labor's Occupational Safety and Health Administration (OSHA), where he worked for over 22 years.  *Id.* at 1-3; *Transcript of Motion Hearing on December 16, 2015* at 130-34 (ECF No. 125) (*12/16/15 Transcript*).  At OSHA, in addition to providing technical assistance and safety trainings, Mr. Cyr's responsibilities included performing inspections of various types of machinery, such as the kind of Yates-American planer at issue in this case. *12/16/15 Transcript* at 134-35.  The Court concludes that this background provides Mr. Cyr with sufficient experience, knowledge, training, and skill to qualify as an expert in this case under Rule 702.

Next, Yates-American objects to the relevance of Mr. Cyr's testimony, stating that "his testimony will not assist the jury in understanding the evidence or in making factual determinations necessary to decide the ultimate issues in this case."

*Def.'s Prelim. Objs.* at 4.  Expert opinions are admissible if they are "relevant not only in the sense that all evidence must be relevant [pursuant to Federal Rule of Evidence 402], but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1988).   In other words:

> The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is "[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved."

*Shay*, 57 F.3d at 132 (quoting *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994)).

The Court concludes that the subject matter in this case lends itself sufficiently to expert testimony.  Mr. Cyr will be testifying about, among other things, the different components of a planer, such as the guard, hood, and infeed and outfeed rolls, as well as the industry standards of safety for these planers.  This kind of technical discussion is not a matter with which lay jurors can be expected to be familiar.  Thus, Mr. Cyr's testimony meets Rule 702's special relevancy standard.

Finally, Yates-American objects to the reliability of Mr. Cyr's testimony. *Def.'s Prelim. Objs.* at 4.  Yates-American specifically addresses several of Mr. Cyr's opinions, claiming, in effect, that he has no knowledge of the history or facts on which he bases these decisions and that his opinions are conclusory and speculative. *Def.'s Mot.* at 19-29.

The Court disagrees.  A court must determine "whether the testimony has a reliable basis in light of the knowledge and experience of the relevant discipline." *Crowe v. Marchand*, 506 F.3d 13, 17 (1st Cir. 2007) (internal citation omitted).  An expert is permitted to testify on the basis of his experience.  *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp. 2d 303, 308 (1st Cir. 2005) (citing *Kumho Tire Co.*, 526 U.S. at 156).  However, "[i]f the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.*  The gatekeeper role requires the judge "to ensure that expert opinions are not 'connected to existing data only by the *ipse dixit* of the expert.'" *Knowlton v. Bankers Life & Cas. Co.*, 882 F. Supp. 2d 129, 131 (D. Me. 2012) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

In his affidavit, Mr. Cyr lays out the basis for each of his opinions.  Specifically, he states that he formed his opinions based on his knowledge and experience from his 22 years working at OSHA, which included the inspection and observation of many Yates-American planers; his four physical inspections of the planer located at Stratton Lumber, which caused Mr. Wyman's injuries and is the subject of this case; his meetings with Mr. Wyman and observation of the injured hand; and his review of photographs, blueprints, and manuals for this, and other, Yates-American planers.  Mr. Cyr further explains how his observations, knowledge, and experience led him to arrive at his opinions, detailing his process for forming his conclusions.  The First Circuit has held that the kinds of visual inspections that Mr. Cyr performed can be

an acceptable way for an expert to detect a problem.  *See Correa v. Cruisers, A Div. of KCS Int'l, Inc.*, 298 F.3d 13, 26 (1st Cir. 2002) ("[W]e find it to be a matter of common sense that a visual inspection . . . would be one acceptable way for a mechanic or engineer to detect an engine problem").

Yates-American, citing *Hochen*, claims that "expert testimony regarding changes to a machine are inadmissible if the expert's testimony is insufficiently grounded in knowledge of the specific machine at issue in this case."  *Def.'s Mot.* at 18.  However, in that case, the First Circuit found that the magistrate judge's exclusion of expert testimony was not an abuse of discretion because the voir dire hearing transcripts established that the expert "showed little knowledge in the fields of fires and explosions" and the transcripts were "replete with substantial challenges to [the expert's] knowledge of the electronic controls of the specific press in question here." *Hochen*, 290 F.3d at 452.  By contrast, Mr. Cyr has spent 22 years at OSHA, during which time he inspected and observed many Yates-American planers, including the specific type of planer at issue in this case.  Moreover, the First Circuit has expressly rejected the proposition that an expert providing testimony regarding the safety design of a machine must have experiences with that particular machine. *DaSilva v. Am. Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1998) ("Such an approach would often mean that the only experts who could testify regarding a machine are those who have an interest in defending its design").

The Defendant's efforts to discredit Mr. Cyr's testimony can and should be made on cross-examination rather than through the wholesale exclusion of Mr. Cyr's

expert testimony.  *See Zuckerman v. Coastal Camps, Inc.,* 716 F. Supp. 2d 23, 28 (D. Me. 2010) ("When the 'adequacy of the foundation for expert testimony is at issue, the law favors vigorous cross-examination over exclusion'") (quoting *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010)); *see Payton v. Abbott Labs*., 780 F.2d 147, 156 (1st Cir. 1985) ("If the factual underpinnings of [the expert's] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony"); *Brown*, 402 F. Supp. 2d at 308 ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination") (citation omitted).  In short, the weight and credibility of Mr. Cyr's testimony are  jury issues.

On this record, the Court does not conclude that Mr. Cyr's expert opinion is "so fundamentally unsupported that it can offer no assistance to the jury."  *See Brown*, 402 F. Supp. 2d at 308.  Even though Yates-American strenuously contends that Mr. Cyr does not have a sufficient foundational basis to express his opinions, its position is bottomed on a disagreement about facts, and the resolution of facts may only be done by a factfinder.  *Daubert* does not require that "the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation was correct."  *United States v. Mooney,* 315 F.3d 54, 63 (1st Cir. 2002) (quoting *Ruiz–Troche,* 161 F.3d at 85).  Because the Court concludes that Mr. Cyr's methodology is reliable and his reasoning valid, he is permitted to testify as to inferences and conclusions he draws from it.  *See id.*  If Yates-American believes there

are flaws in Mr. Cyr's opinion, again, it is free to expose those flaws using the traditional tools of trial work.

Lastly, Defendant argues that Mr. Cyr's opinions should be kept out under Rule 403 because they would confuse and mislead the jury. *Def.'s Mot.* at 4. However, Mr. Cyr's opinions have special relevance because they "likely would assist the trier of fact to understand . . . a fact in issue" related to the liability and causation issues. *See First Marblehead Corp. v. House*, 541 F.3d 36, 42 (1st Cir. 2008); *Ruiz-Troche*, 161 F.3d at 81. Accordingly, Yates-American's concerns about Mr. Cyr's opinions misleading the jury are outweighed by the relevance of his testimony and are safeguarded by Yates-American's ability to engage in vigorous cross-examination, present contrary evidence, and provide careful instructions on the burden of proof at trial. *See* Fed. R. Evid. 403; *Daubert*, 509 U.S. at 596.

### 2.      John Orlowski, P.E., CSP, BCFE

Yates-American first objects to Mr. Orlowski's proposed testimony on the grounds that he is not qualified to provide expert testimony on the planer industry or on whether the planer or any of its parts are from the 1973 Yates-American A-20-12 planer. *Def.'s Prelim. Objs.* at 9-10. Specifically, Yates-American states that Mr. Orlowski cannot assist the jury on the issues in this case because he "has no engineering degree and no education with respect to product warnings other than through litigation and has no experience in designing any products that were sold to the public." *Id.* at 9.

The Court disagrees. Although Mr. Orlowski may not have an engineering degree, "[i]t is not required that experts be 'blue-ribbon practitioners' with optimal

qualifications." *Vargas*, 471 F.3d at 262 (quoting *United States v. Mahone*, 453 F.3d 68, 71 (1st Cir. 2006)).   All that is required is that, under the totality of the circumstances, the witness can be said to be qualified as an expert through his "knowledge, skill, experience, training, *or* education."   *Correa*, 298 F.3d at 25 (emphasis in original); *see* FED. R. EVID. 702.

Mr. Orlowski is a licensed Professional Engineer in Maine, Massachusetts and New York.  *Orlowski Aff.* ¶ 7.  He is a Certified Safety Professional in Engineering Aspects as well as a Board Certified Forensic Examiner.  *Orlowski Resume* at 1.  He has taken a number of engineering-related courses and belongs to numerous professional engineering organizations.  *Id.* at 1-2.  Mr. Orlowski co-authored a chapter of "Products Liability" entitled *Engineering Aspects of Guarding of Machinery and Equipment*.  *Id.* at 2.  He has considerable experience in engineering, having worked as a forensic consulting engineer for the past 34 years and as an engineer for 15 years before that.  *Id.* at 2-4.  Mr. Orlowski has also been qualified to testify as an expert in several courts.  *Id.* at 5.  Given this professional background, the Court concludes that Mr. Orlowski has sufficient knowledge, skill, experience, and training to qualify as an expert in this case under Rule 702.

Yates-American also objects to the relevance of Mr. Orlowski's testimony, stating that "his testimony will not assist the jury in understanding the evidence or in making factual determinations necessary to decide the issues." *Def.'s Prelim. Objs.* at 8.  Expert opinions must have special relevance, that is, the expert's proposed opinion likely would assist the trier of fact to understand or determine a fact in issue.

*Ruiz-Troche*, 161 F.3d at 81.  To assess the special relevance of an expert's testimony, a court must determine "[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved." *Shay*, 57 F.3d at 132 (quoting *Montas*, 41 F.3d at 783).

The Court concludes that the subject matter in this case lends itself sufficiently to expert testimony.  Mr. Orlowski's proposed testimony includes the opinions that the planer was defective and unreasonably dangerous because it lacked guards, emergency stop controls, and suitable warnings, that Yates-American and Industrie Guerette failed to act reasonably by failing to provide adequate warnings, and that the condition of the planer caused Mr. Wyman's injuries.  Again, this technical discussion regarding the machine manufacturing industry is not a matter with which lay jurors can be expected to be familiar.  The Court concludes that Mr. Orlowski's testimony meets Rule 702's special relevancy standard.

Finally, Yates-American objects to the reliability of certain parts of Mr. Orlowski's testimony.  *Def.'s Prelim. Objs.* at 8.  The Court disagrees with this objection.  An expert is permitted to testify on the basis of his experience.  *Brown*, 402 F. Supp. 2d at 308 (citing *Kumho Tire Co.*, 526 U.S. at 156).  However, "[i]f the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.*  The gatekeeper role requires the judge "to ensure that expert opinions are

not 'connected to existing data only by the *ipse dixit* of the expert.'" *Knowlton*, 882 F. Supp. 2d at 131 (quoting *Gen. Elec. Co.*, 522 U.S. at 146).

In his affidavit, Mr. Orlowski lays out the basis for each of his opinions. Specifically, he states that he based his opinion that Yates-American designed, manufactured, and sold the planer on the physical inspections of the planer at Stratton Lumber, the serial number on the planer, photographs, and other documents, such as Yates-American manuals and invoices for the planer at Stratton Lumber. He also explains that he has extensive experience designing machinery and guards for machinery, that he has a patent on a unique type of machine guard, and that he co-authored a chapter that discusses general guarding principles and specific principles relating to the guarding of nip-points, which is the issue in this case. Mr. Orlowski also explains that his training and the knowledge he garnered from literature in this area helped him to form his opinion that the planer could have been guarded. The Court concludes that Mr. Orlowski's training, experience, and knowledge of the industry combined with his physical inspections of the machinery in this case provide a sufficient foundation for his testimony.

Of course, Yates-American is welcome to put Mr. Orlowski's expertise and opinions to the test on cross-examination and to offer countervailing expert opinions. *See Hinton,* 828 F. Supp. 2d at 372. At the close of trial, the standard jury instructions within this Circuit will inform the jury that it may weigh "the relative expertise of each expert in evaluating how much weight to give the expert's testimony." *See id.*; *Judge Hornby's Draft Civil Jury Instructions*, *Opinion Test.*, *Expert Witnesses* at 5

("Expert testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case").  Nevertheless, because it concludes that Mr. Orlowski is qualified to express the expert opinions for which he has been designated and because those opinions would be helpful to the jury and are reliable, the Court declines to exclude his expert testimony under Rule 702.

In sum, the Court finds that the proposed testimony of both Mr. Cyr and Mr. Orlowski is admissible under Rule 702.

## IV.   CONCLUSION

The Court DENIES Yates-American's Supplemental Brief to Exclude Plaintiff's Experts (ECF No. 133).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 31st day of October, 2016

29